UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>v.<br><br>ISRAEL VALADEZ-NONATO,<br><br>               Defendant. | CRIM. No. 10-268-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to suppress the statement of Defendant Israel Valadez-Nonato ("Valadez").  The Court heard evidence on September 30, 2011, and granted the motion from the bench.  This decision will elaborate on that ruling.[1]

## FACTUAL BACKGROUND

Defendant Valadez is charged with armed bank robbery and possession of a firearm in furtherance of armed bank robbery.  While in state custody, Valadez made incriminating statements to a police detective that he now seeks to suppress.

---

[1] Throughout this decision, the Court refers to the tape recordings as Exhibits E and G.  The recordings were marked at the evidentiary hearing, with Exhibit E being marked as Exhibit 1, and Exhibit G being marked as Exhibit 2.  Moreover, the police reports were marked at the hearing as Exhibits 20, 22, 23, and 24.

On July 2, 2010, Nampa City Police Corporal Angela Weekes interviewed Amanda Valadez, the defendant's wife, after Ms. Valadez contacted Nampa police concerning a domestic dispute with the defendant. During the interview, Ms. Valadez implicated her husband in the robbery of a Wells Fargo bank, located in Nampa, which had occurred on January 13, 2009. Local law enforcement obtained a warrant and arrested Valadez in Caldwell that evening.

Weekes interviewed Valadez in the Canyon County Jail the next morning, and made an audio recording of the conversation. She began by reading Valadez his *Miranda* rights. Valadez waived his rights, and agreed to talk to Weekes. Weekes then proceeded to question Valadez about his involvement in the Wells Fargo robbery. For the first forty-eight minutes of the interview, Valadez denied all involvement. At that point, the following exchange occurred:

> Weekes: The desperate choice you made and I think if you had to go back and do it over Israel even as desperate as you were I don't think you would have done it. Because sometimes what happens when people are using any substance like drugs or alcohol, obviously when they are already experiencing a lot of emotional stuff going on and then they hit a rock bottom state, any alcohol or drugs everything involved in that lower inhibitions when you think about [unintelligible] other thought processes [unintelligible] rational for a period of time, and that complicates a lot of other stuff that's going on in your life Israel. Were you using at that time? That's an actual thing I don't know. Were you using back then Israel?
>
> Valadez: I'll talk to my lawyer or something.
>
> Weekes: You have every right to do that. I'll write in my report that I gave you a shot. Gave you a shot to be accountable and honest.

| | |
|---|---|
| Valadez: | [unintelligible] |
| Weekes: | You know what? |
| Valadez: | You want a yes or no and... |
| Weekes: | It's a yes or no and it's to explain. That's all I can offer you. Your choice. You set your own path. |
| Valadez: | My path is already set with you people. |
| Weekes: | You can't blame this on anybody anymore Israel. You can't blame it on–hey [unintelligible] you said you want to talk to your lawyer. You can't blame it on anybody anymore. |
| Valadez: | I'm not blaming it on anybody. |

*See Exhibit E (Dkt. No. 23-6)* at 47:05.[2]  The interview continued, and Valadez continued to maintain that he was not involved in the robbery.

Several minutes later, Weekes told Valadez how she had left groceries on the steps of his house for his family.  *Id.* at 52:25.  Valadez then grew emotional and started crying, according to Weekes testimony at the evidentiary hearing.  He then confessed.  *Id.* at 55:00.  Weekes concluded the interview approximately ten minutes later.

Sometime later, Valadez called Weekes and requested to meet with her again. Weekes returned to the Canyon County Jail and conducted a second interview with the Defendant on July 13th.  In the second interview, Valdez recanted his July 3rd confession.  He told Weekes he had intentionally invoked his *Miranda* rights before

---

[2]  At the evidentiary hearing, the transcript was marked as Government Exhibit 3 and Defense Exhibit 25.  During her testimony, Weekes clarified some areas that had been described as "unintelligible" on the transcript, and she hand-wrote her clarifications on Exhibit 25.  None of those clarifications had a substantive effect on the legal analysis.

confessing: "I felt by [asking to speak to an attorney] that, you know, none of this was gonna be taken into consideration . . . . The evidence was gonna be, or whatever I told you, was gonna be suppressed." *See Exhibit G (Dkt. 31)* at 4:10. Valadez initially stated that he had confessed because he "needed to stay away from [his wife]." *Id.* at 2:10. Later in the interview, he claimed he had confessed to ensure that his wife would not have to interact with the police. *Id.* at 31:55.

Valadez now moves to suppress his confession as obtained in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966)*,* and its progeny. At the evidentiary hearing held on September 30, 2011, the Court heard testimony from Weekes and argument from counsel.

## LEGAL STANDARD

*Miranda* requires that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. Once an individual invokes their right to counsel, he is "not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). If the court finds that the suspect did invoke his right to counsel, then it "may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 95 (1984) (per curiam).

This Court addresses these requirements sequentially. It finds that Valadez did invoke his right to counsel, and that he did not initiate further discussion with the police.

Because Valadez did not waive his invoked right to counsel, the Court does not reach the voluntariness issue.

## ANALYSIS

### Invocation of Right to Counsel

*Edwards* requires courts to "determine whether the accused *actually invoked* his right to counsel." *Davis v. United States*, 512 U.S. 452, 458 (1994) (emphasis in original)(internal quotations omitted). Law enforcement need not stop questioning if the suspect's request for counsel "is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." *Id.* at 459 (emphasis in original). "Whether a statement is an unambiguous request for counsel 'is an objective inquiry.'" *Paulino v. Castro*, 371 F.3d 1083, 1087 (quoting *Davis*, 512 U.S. at 459). However, the accused need not "speak with the discrimination of an Oxford don." *Davis*, 512 U.S. at 459 (internal quotations omitted). The words of the request will be "understood as ordinary people would understand them." *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987).

In this case, approximately forty eight minutes into the interview Detective Weekes asked Valadez if drug abuse had caused him to rob the Wells Fargo bank. *See Exhibit E (Dkt. No. 23-6)* at 47:05. In response, Valadez said "I'll talk to my lawyer or something." *Id.* at 48:25. Weekes testified at the evidentiary hearing that she did not understand Valadez to be invoking his right to speak with an attorney. However, this is belied by her own comment, made moments after Valdez's statement, that:

> You can't blame this on anybody anymore Israel.  You can't blame it
> on–hey [unintelligible] *you said you want to talk to your lawyer.*  You can't
> blame it on anybody anymore

*Id.*(Emphasis added).   Moreover, counsel for the Government concedes that Valadez did

so invoke his right, and the Court agrees with the Government.  Valadez's statement was

sufficiently clear that a "reasonable police officer in the circumstances would understand

the statement to be a request for an attorney."  *Davis*, 512 U.S. at 459.

**Waiver of Right to Counsel – Reinitiation of Discussion**

After invoking their right to counsel, *Edwards* requires that questioning must cease

until the individual's request for counsel has been honored,  "unless the accused himself

initiates further communication, exchanges, or conversations with the police."  *Edwards*,

451 U.S. at 485.  *Edwards* is "meant to prevent police from badgering defendants into

changing their minds about their rights."  *Montejo v. Louisiana*, 129 S. Ct. 2079, 2087

(2009).   A suspect reinitiates conversation if they make an inquiry that "represent[s] a

desire on the part of an accused to open up a more generalized discussion relating directly

or indirectly to the investigation."  *Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983)

(plurality opinion).  Because *Edwards* creates "a presumption of involuntariness" for

subsequent waiver of *Miranda* rights, the burden of proof is on the Government.

*Maryland v. Shatzer*, 130 S. Ct. 1213, 1220 (2010).  The Court looks at the totality of the

circumstances to determine if the individual initiated further conversation.  *United States*

*v. Michaud*, 268 F.3d 728 , 737 (9th Cir. 2001).

The Court finds that Weekes's response to Valadez's invocation constituted

continued interrogation. Weekes was the first party to say anything after Valadez's invocation. She responded by stating: "You have every right to do that. I'll write in my report that I gave you a shot. Gave you a shot to be accountable and honest." Interrogation not only includes express questioning, but its "functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The functional equivalent of questioning is a statement that the police "*should have known* [was] reasonably likely to elicit an incriminating response." *Id.* at 302. Prior to Valadez's invocation, Weekes had developed accountability as a theme, repeatedly telling him that she would tell the judge that she gave him a chance to be "accountable" for his actions, and that he had a duty to his family to confess.[3] Weekes's post-invocation statement was thus a repetition of an

---

[3] Weekes references to accountability are numerous. The Court notes two prototypical excerpts that demonstrate her approach:

> I'm here because I know it happened. And when I go before the judge and say "I gave him a chance to be accountable, Your Honor, I gave him a chance to talk about why this happened so now he's giving me some sob story about why this happened and why, you know, why he got desperate, why should we believe him now. I gave him a chance to tell me that back in July." I mean do you see what I'm saying? He's gonna look at that and he's, you know how judges, well, a little bit, you should know how judges are gonna think about that.

*See Exhibit E (Dkt. No. 23-6)* at 26:51.

> Its gonna make a difference, not just in the criminal justice system and you know that. Its gonna make a difference– it may make a difference in your life. It'd make a difference in your wife's life. It'd make a difference in your kid's life . . . . What are they gonna hear? Are they gonna hear that, if nothing else, he was an honest man who made a desperate mistake, or are they going to hear that he was an unaccountable, callous coward, who isn't accountable, and robbed a bank.

*Id.* at 31:50.

**Memorandum Decision and Order - 7**

interrogation tactic designed to provoke an incriminating response. Because Weekes's reference to accountability was designed to provoke a response from Valadez, it constituted interrogation. The Court therefore disagrees with the argument by Government's counsel at the evidentiary hearing that Weekes's continued interrogation was merely her way of terminating the interview – by continuing to use the same technique to elicit a confession. Weekes was not seeking to end the interrogation but was instead continuing her effort to obtain a confession from Valadez.

The Court's conclusion that Weekes's statement amounted to interrogation is supported by *Collazo v. Estelle*, 940 F.2d 411 (9th Cir. 1991) (en banc). There, the defendant requested a lawyer and the interviewing detective responded, "It's up to you. This is your last chance to talk to us, though" and then told him, "Then it might be worse for you." *Id.* at 414. The police then departed, but the defendant called them back after three hours, waived his *Miranda* rights, and confessed. *Id.* at 414. The Ninth Circuit held that the subsequent confession was involuntary because the detective's response to the defendant's invocation of his *Miranda* rights was "calculated to pressure [the defendant] into changing his mind about remaining silent, and into talking without counsel to his interrogators." *Id.* at 416.

Weekes's response to Valadez's invocation is similar to the detective's statement in *Collazo*. Both statements amount to an attempt to "impose a penalty on [the] choice to remain silent." *Id.* at 417. Weekes's statement was not as aggressive in tone as the detective's statement in *Collazo*. *Id.* at 416. However, Weekes's statement linked

Valadez's attempt to exercise his *Miranda* rights to a set of thoroughly expounded negative consequences that was at least as coercive. As the Ninth Circuit held in *Collazo*, this Court concludes that this tactic constituted custodial interrogation under *Innis* and was a "textbook violation" of the *Edwards* requirement that questioning cease after a suspect's request for an attorney. *Id.* at 417-18.

The Government, however, urges the Court to look beyond "'who said what first.'" *Shedelblower v. Estelle*, 885 F.2d 570, 574 (9th Cir. 1989) (quoting *Bradshaw*, 462 U.S. at 1051 (Powell, J., concurring)). Although the Court does apply a totality of the circumstances test, the Court finds it strongly dispositive that Weekes responded to a valid invocation by pressuring the Defendant to keep talking. That persistence was inconsistent with the core rationale of *Edwards*: a suspect who has requested counsel should not be "badgered into submission" by attempts to continue questioning. *Shatzer*, 130 S. Ct. at 1220 (internal quotations omitted). "A statement taken after the suspect invoked his right to remain silent 'cannot be other than the product of compulsion, subtle or otherwise.'" *Anderson*, 516 F.3d at 789-90 (quoting *Miranda*, 384 U.S. at 474). Further, the additional circumstances of the interview also lead the Court to conclude that Valadez did not reinitiate conversation.

Most importantly, Valadez's invocation of his right to counsel did not lead to *any* temporal break in Weekes's interrogation. In *Anderson*, the Ninth Circuit held that when the police simply "continued the conversation" after the suspect's valid invocation of his *Miranda* rights, the suspect's continued participation could not be used to "find a waiver

or cast ambiguity on the earlier invocation." 516 F.3d at 791. The Circuit reasoned that "[f]or the 'right to remain silent' to have currency, there must be some silence. The interrogation must stop for some period of time. Although the Supreme Court has yet to tell us how long the break in questioning must last, in this case there was no cessation at all." *Id.* at 792. As in *Anderson*, Weekes failed to give Valadez any respite from the pressure of continued interaction with law enforcement.

Thus, the statements Valadez made after invoking his right to counsel cannot be deemed an attempt to reinitiate the conversation. The Government claims that Valadez's statements made during the second interview on July 13, 2010, show that he intended to reinitiate the conversation in that first interview even after invoking his right to talk to an attorney. However, the rule in *Edwards* is a bright-line rule. *See Arizona v. Roberson*, 486 U.S. 675, 681 (1988) (reviewing the case law and concluding "[w]e have repeatedly emphasized the virtues of a bright-line rule in cases following *Edwards* as well as *Miranda*). The reasons revealed by Valadez in the second interview were never conveyed to Weekes in the first interview, and her continued interrogation after Valadez invoked his right to counsel violated the bright-line rule in *Edwards.*

### B.      Voluntariness of Waiver.

Because the Court finds that Valadez did not waive his right to counsel by reinitiating conversation, it does not address the voluntariness issue.

### ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to suppress (docket no. 23) is GRANTED to exclude from the Government's case-in-chief the use of any of Israel Valadez-Nonato's July 3rd, 2010 confession that was made after his statement "I'll talk to my lawyer or something."

**DATED: October 6, 2011**

**Honorable B. Lynn Winmill**
**Chief U. S. District Judge**